IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
Relator, Laura Stringer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and to issue an order finding that she is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315.
Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court, who examined the evidence and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in denying her application for PTD compensation and recommended that this court deny the requested w rit.
Relator has filed objections to the magistrate's decision, and the matter is now before this court for a full, independent r eview.
Relator's objections to the contrary, this court agrees with the magistrate's analysis of the pertinent issues. Accordingly, for the reasons set forth in the magistrate's decision, this court overrules relator's objections and adopts the magistrate's decision as its own, including the findings of fact (with a corrected date of May 16, 1988 in the first paragraph of the findings of fact and a correction from TTD to PTD in the thirteenth paragraph of the findings of fact) and conclusions of law contained therein. In accordance with the magistrate's d ecision, this court hereby denies the requested writ of mandamus.
Objections overruled; writ denied.
TYACK, P.J., and DESHLER, J., concur.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS
Relator, Laura Stringer, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and asked this court to order the commission to find that she is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315.
Findings of Fact:
1. Relator has sustained two work-related injuries. The first injury occurred on August 6, 1987, and has been allowed for nonspecific conditions involving the left arm and hand, but specifically disallowed for left and right carpal tunnel syndrome and aggravation of preexisting carpal tunnel syndrome left and right. The second injury occurred on May 16, 1998, and has been allowed for: "Herniated disc L4-5 and L5-S1; right foraminal stenosis at L5-S1; failed back syndrome."
2. Relator has had two surgeries performed on her back, the first in 1990. Relator reinjured her back in 1992, and the second surgery was performed in 1993.
3. Relator last worked in 1996.
4. On March 23, 2000, relator filed the application seeking PTD compensation. At the time of the application, relator was sixty-eight years old, had completed the sixth grade, had worked as a school bus driver, a real estate agent, and a barmaid/waitress.
5. Relator was examined by Dr. David C. Randolph who issued a report dated May 23, 2000. Dr. Randolph concluded that relator was capable of returning to sedentary work activities; however, he recommended that a functional capacity examination was necessary in order to fully address this issue. Dr. Randolph listed the following functional limitations:
 Based solely on subjective information and the objective physical examination, it is my opinion she should be capable of work related activities in a sedentary physical demand characteristic only. She should avoid prolonged work in a single position but be permitted frequent position changes as needed. Bending, twisting and stooping may be performed on a minimal basis. She should avoid lifting or carrying objects weighing in excess of 10 pounds.
6. Because Dr. Randolph indicated that a functional capacity examination was necessary, relator was directed to report to Richard J. Wickstrom, PT, CPE. Relator contested the issue of attending this exam; however, the hearing administrator issued an order finding that the examination is not a "second" examination but that it was a series of tests used to assist the examining physician in his assessment and that relator was required to attend and participate unless she could show good cause preventing her from participating.
7. Mr. Wickstrom examined relator and issued a report dated August 10, 2000. Mr. Wickstrom concluded that relator's lifting abilities were in the sedentary to sedentary-light range. He indicated that relator could lift, carry, push, pull up to fifteen pounds with the exception of her upper lifting and pushing being confined to five pounds. Relator was unrestricted in her ability to sit and could occasionally stand and walk; occasionally drive but never use foot controls with both feet; however, could occasionally use foot controls with one foot; hand use with both hands was restricted to frequently; hand use with one hand was unrestricted; reaching with both arms was restricted to occasionally; reaching with one arm was restricted frequently; stooping and bending was restricted to frequently; and relator was precluded from crouching, crawling, and climbing. Mr. Wickstrom concluded that, based solely upon the allowed conditions, relator is capable of performing the full range of jobs requiring sedentary physical demands and a limited range of jobs that require light physical demands. He indicated further that the employer had previously created a job which was consistent with her limitations but that relator had stopped performing that job due to hypertension and problems with her hands. He opined that relator had reached maximum medical improvement and that it was unlikely that she would achieve any substantial functional improvement with any further skilled therapy.
8. Relator was also examined by Dr. Kenneth R. Hanington on October 19, 2000. Dr. Hanington opined that she had reached maximum medical improvement, assessed a twenty-five percent whole person impairment, concluded that she was unable to return to her former position of employment but that she would be capable of performing other work in a sedentary capacity. Dr. Hanington completed an occupational activity assessment wherein he indicated that relator could sit, stand, and walk for three to five hours; was unrestricted in her ability to carry, push, pull or otherwise move up to ten pounds; could occasionally climb stairs and reach overhead; was unrestricted in her ability to handle objects as well as lift at waist and knee level; was precluded from climbing ladders, using foot controls with her right foot, crouching, stooping, bending, and kneeling as well as reaching at floor level.
9. An employability assessment was prepared by Mark A. Anderson, MS, LPC, CDMS, dated September 28, 2000. Pursuant to the medical reports of Drs. Hanington and Randolph, Mr. Anderson concluded that relator could perform the following jobs:
 Telemarketer, Information Clerk, Appointment Clerk, Patcher, Security Camera Monitor, Document Preparer-Microfilm, Order Clerk-Food Beverage, Film Touch-Up Inspector, Touch-Up Screener Printed Circuits, Sorter, Credit Authorizer, Bonder, Taper, Ampoule Sealer, Preparer.
Mr. Anderson opined that, at age sixty-eight, relator would have more difficulty than her younger counterparts in learning new skills but that the occupations he listed were entry level occupations that did not require complex tasks. He noted that the highest level of schooling she completed was the sixth grade and that she had no diploma or GED. However, he noted that she had obtained a real estate license which had lapsed because she had not complied with the continuing education requirements. With regard to her work history, Mr. Anderson noted that relator has worked in skilled and semi-skilled jobs and that her work as a real estate agent, being skilled, would have required the ability to read, write and perform basic mathematical functions. He concluded that it was unlikely that relator would benefit from a remediation program but restated that she was capable of entry level sedentary occupations. He concluded that if relator were to actively seek employment she would benefit from job placement assistance to learn how to market herself to prospective employers.
10. An employability assessment was prepared by Craig Johnston, MRC, CRC, and dated January 20, 2001. Mr. Johnston noted that relator's past work history required her to demonstrate seventh to eighth grade reasoning and language proficiencies as well as fourth to sixth grade levels of mathematical proficiency. Based upon the restrictions identified by Drs. Randolph and Hanington, Mr. Johnston indicated that relator could return to work in light assembly, or work unrelated to her past employment but within her basic vocational capacities. He listed the following positions: "Parking-Lot Booth Attendant, Surveillance-System Monitor, and Bonder." Relator's age was seen as a potential barrier but, Mr. Johnston indicated that it would not be, by itself, work prohibitive. He noted that relator had last worked in 1996 when she was sixty-four years old. He saw relator's education as a potential barrier to employment. Her prior work history indicated that she has demonstrated temperaments for performing repetitive activities and dealing with people. He noted further that her semi-skilled work history reflected an ability to overcome her marginal education and to obtain employment despite not possessing a high school diploma.
11. On November 1, 2001, relator filed a motion asking to depose the vocational expert, Mr. Anderson. In her motion, relator sought clarification as to several issues pertaining to conclusions reached by Mr. Anderson. Nowhere in her motion did relator indicate that there was a substantial disparity between the report of Mr. Anderson and the reports of any other vocational experts.
12. By order dated January 18, 2001, a staff hearing officer ("SHO") denied relator's request as follows:
 Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that the claimant's motion is unreasonable because the reasons set forth by the claimant's motion merely state the opinions and conclusions of Mr. Anderson with which the claimant disagrees. The claimant has not provided any other evidence which would contradict the conclusions of Mr. Anderson and demonstrate any type of substantial disparity. Therefore, it is the order of the Staff Hearing Officer that the claimant's motion is denied. The processing of all pending issues is to resume.
13. Relator's application for PTD compensation was heard before an SHO on March 20, 2001, and resulted in an order denying relator's request for TTD compensation. The SHO relied upon the reports of Drs. Randolph and Hanington, and Mr. Wickstrom, Anderson, and Johnston. Based upon the reports of Drs. Randolph and Hanington, the SHO concluded that relator retained the physical functional capacity to perform employment activities which are sedentary in nature. After summarizing the vocational evidence provided in the reports which were submitted, the SHO concluded as follows:
 The Staff Hearing Officer finds that the claimant's age of 69 years is a barrier to the claimant with regard to her ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that age alone is not a factor which would prevent the claimant from returning to work. The Staff Hearing Officer further finds that the claimant's marginal education would be a barrier to the claimant with regard to her ability to return to work. The Staff Hearing Officer further finds, however, that the claimant has never had more than a marginal education and it has not prevented her from working in the past. The Staff Hearing Officer further finds that not only has it not prevented the claimant from working in the past, it has not prevented the claimant from performing skilled employment activities in the past. The Staff Hearing Officer further finds that conflicting evidence exists concerning the claimant's ability to read, write and perform basic math. The Staff Hearing Officer notes, however, that the claimant's academic skills did not prevent her from obtaining a real estate license. The Staff Hearing Officer further finds that the fact that the claimant has performed skilled employment activities in the past is evidence that the claimant possesses the intellectual capacity to learn to perform at least unskilled employment activities in the future. Based upon the report of Mr. Anderson, the Staff Hearing Officer finds that the claimant posses [sic] academic skills that are sufficient for the performance of many entry level sedentary jobs. The Staff Hearing Officer further finds that although the claimant, at the age of 69 years, would not be a good candidate for rehabilitation or remediation, claimant is capable presently of entry level sedentary occupations. The Staff Hearing Officer further finds that the claimant has demonstrated the following temperaments in her work history which might be helpful to her in the performance of future employment: performing repetitive, or short cycle work; dealing with people; making judgments and decisions and influencing people in their opinions, attitudes, and judgments. The Staff Hearing Officer accepts the residual functional capacities opinions of Dr. Hanington and Dr. Randolph. Based upon the opinion of Mr. Anderson, the Staff Hearing Officer finds that the claimant would be capable of performing the following jobs immediately: Security Camera Monitor; Document Preparer-Microfilm; Order Clerk-Food and Beverage; Film Touch-Up Inspector; Touch-Up Screener-Printer Circuits; Sorter; Bonder; Taper; Ampoule Sealer; and Preparer. The Staff Hearing Officer therefore finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Claimant's Application for Permanent and Total Disability filed 3/23/2000 is therefore denied.
14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator raises the following three arguments in this mandamus action: (1) the commission abused its discretion by finding that relator was obligated to undergo a functional capacity examination requested by Dr. Randolph who examined relator at the request of the self-insured employer; (2) the commission abused its discretion by finding that relator was not entitled to take the deposition of vocational expert Mark Anderson when the report was unclear and contradictory on its face; and (3) the commission abused its discretion by failing to adequately specify and explain the combined impact of all of the nonmedical vocational factors as required in Stephenson, supra. For the reasons that follow, this magistrate finds that relator's arguments lack merit.
R.C. 4123.651 provides for the examination of a claimant by a physician of the employer's choice and provides in pertinent part as follows:
 (A) The employer of a claimant who is injured or disabled in the course of his employment may require, without the approval of the administrator or the industrial commission, that the claimant be examined by a physician of the employer's choice one time upon any issue asserted by the employee * * *. Any further requests for medical examinations shall be made to the commission which shall consider and rule on the request. The employer shall pay the cost of any examinations initiated by the employer.
Ohio Adm. Code 4123-3-09(a) and (b) provide additionally, in relevant part, as follows:
 (a) In no event will the claimant be examined more than one time at the request of the employer on any issue that is asserted by the claimant or which is to be considered by the commission, during the time that the specific matter asserted or that is in controversy remains pending final adjudication before the bureau or commission.
 (b) If after a medical examination of the claimant under paragraph (A)(5)(a) of this rule on an issue that remains in controversy and has not been finally adjudicated, an employer asserts that an additional medical examination by a doctor of the employer's choice is essential in the defense of the claim by the employer, written request for such an examination shall be submitted to the hearing administrator only in cases where there is a dispute as to the request for additional examination. * * *
 All reasonable expenses of such examination, including any travel expense shall be paid by the employer immediately upon the receipt of the billing. * * *
Relator directs this court's attention to (A)(5)(a) and not (b). Obviously, pursuant to (5)(a) the employer is only entitled to have relator examined one time on any issue that is asserted by relator. In the present case, the employer required that relator be seen by Dr. Randolph. However, within the body of Dr. Randolph's report, he specifically noted that a functional capacities evaluation was necessary in order to fully address the issue of whether relator could return to sedentary work activities. The relator challenged this request and the matter was heard before an SHO. The SHO specifically concluded that the upcoming examination with Mr. Wickstrom was not a second examination but was part of a series of tests used to assist an examining physician in his assessment, and ordered relator to attend unless she could show good cause preventing her from participating in the testing. Relator did not appeal this order nor does she present any persuasive reasons evidencing good cause.
The SHO concluded that the employer was not requiring relator to submit to a second examination. In looking at (5)(b), it is apparent that there is a certain amount of discretion whereby the commission can require a claimant to submit to a second medical examination at the employer's request. As such, there is no absolute right as relator contends that she would only be forced to submit to one medical examination at the employer's request. Instead, it is apparent that a second examination may be required if the employer asserts that the additional medical examination is essential in the defense of the claim by the employer. Given the foregoing, relator has not demonstrated an abuse of discretion in this regard.
Relator also contends that the commission abused its discretion by denying her the opportunity to depose vocational expert, Mark Anderson. R.C. 4123.09 vests the commission with the authority to allow the taking of depositions and provides as follows:
 In claims filed before the industrial commission * * * by injured employees * * * on account of injury * * * sustained by such employees in the course of their employment, the commission * * * may cause depositions of witnesses residing within or without the state to be taken in the manner prescribed by law for the taking of depositions in civil actions in the court of common pleas.
Ohio Adm. Code 4121-3-09(A)(6) provides a procedure for obtaining the oral deposition of an industrial commission physician. Ohio Adm. Code4123-3-09(A)(6)(d) enumerates the factors to be considered in determining the reasonableness of a request for a deposition and provides, in pertinent part:
 * * * [W]hether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay. * * *
Relator filed a motion seeking to depose Mr. Anderson and the matter was heard before an SHO who denied the motion after determining that it was unreasonable because relator's only basis was that she disagreed with the expert's opinion. The SHO concluded that there was no evidence presented to show that there was a substantial disparity between the report of Mr. Anderson and the reports of the others.
The decision whether to grant or deny a party the right to depose a witness in connection with a workers' compensation case is discretionary. LTV Steel Co. v. Indus. Comm. (2000), 140 Oho App.3d 680. R.C. 4123.09 is a permissive statute giving the commission discretion and indicated the commission may cause depositions to be taken. There is no right, as relator asserts, requiring the commission to grant a party's request to take a deposition under any circumstances. In the present case, relator did not indicate in her motion that a substantial disparity existed between the report of Mr. Anderson and a report of others. Instead, she merely listed opinions stated by Mr. Anderson and indicated that she wanted to seek clarification as to those issues. Based on the record, it cannot be said that the commission abused its discretion by denying relator's request to depose Mr. Anderson.
Lastly, relator contends that the commission did not adequately specify and explain the combined impact of all the nonmedical vocational or factors as required by Stephenson, supra. Relator contends that the commission merely noted the nonmedical vocational medical factors without explaining them. This magistrate disagrees.
In the present case, the commission determined, that from a medical standpoint, relator could physically engage in sedentary work. Thereafter, the commission summarized the conclusions based by the three vocational experts upon which the commission specifically relied in denying relator's application for PTD compensation. The commission has the discretion to accept one vocational report while rejecting another vocational report. Or, the commission can reject all the vocational reports and conduct its own analysis of the nonmedical factors. See State ex rel. Jackson v. Indus. Comm (1997), 79 Ohio St.3d 266. Further, if the vocational reports extensively discuss and analyze all the relevant nonmedical factors, the commission does not need to repeat that analysis in its order. State ex rel. Hunt v. Indus. Comm. (Sept. 28, 1995), Franklin App. No. 94AP-1659, unreported (Memorandum Decision); State ex rel. Freeman v. Indus. Comm. (Mar. 17, 1998), Franklin App. No. 97AP-251, unreported (Memorandum Decision).
In the present case, the vocational experts did provide extensive explanations of their analysis of the nonmedical factors. The commission relied upon three vocational reports. In addition, the commission conducted its own analysis and again cited the vocational report of Mr. Anderson. The commission found that relator's age of sixty-nine years is a barrier with regard to her ability to return to compete in the workforce; however, the commission concluded that age alone is not a factor which would prevent this relator from returning to work. The record indicates that relator had worked up until she was sixty-four years old. With regard to relator's education, the SHO noted that her marginal education would be a barrier with regards to her ability to return to work. However, the SHO noted that relator had never had more than a marginal education in the past and that she had not been prevented from working. Further, the SHO noted that relator had obtained a real estate license, despite her alleging that she was not able to read, write or perform basic math well. The SHO noted that there was conflicting evidence in the record concerning relator's ability to read, write and perform basic math. The SHO noted further that relator has performed skilled employment and that she possesses the intellectual capacity to learn and perform skilled employment activities in the future. Based upon the report of Mr. Anderson, the SHO found that relator possessed academic skills which are sufficient for the performance of many entry level sedentary jobs. The SHO noted that relator's prior work history indicates certain temperaments which would be helpful for her in the performance of future employment: performing repetitive or short-cycle work; dealing with people, making judgments and decisions and influencing people in their opinions, attitudes, and judgments.
Relator directs this court's attention to the vocational evidence she submitted; however, the commission chose not to rely on that vocational expert and that fact does not constitute an abuse of discretion.
Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied.
 STEPHANIE BISCA BROOKS MAGISTRATE